UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x
MARIO VALDIVIEZO,

                          Plaintiff,

          -against-                          **MEMORANDUM AND ORDER**

DETECTIVE GREER, DETECTIVE BOLDEN,           14-CV-4897 (KAM)
and DETECTIVE MARSHALL.

                          Defendants.
--------------------------------------x

**MATSUMOTO, United States District Judge:**

          Plaintiff Mario Valdiviezo, ("plaintiff" or

"Valdiviezo"), proceeding *pro se*, commenced this action on

August 14, 2014, against defendants City of New York, the 66th

Precinct, Detective William Greer and, by amendment, Detective

John Bolden, alleging violations of his rights under the Civil

Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"). (*See* ECF

No. 1, Complaint ("Compl."); ECF No. 16, Order Amending

Complaint and Case Caption.)  The action was consolidated with a

separate action, alleging violations of plaintiff's

constitutional rights by defendants the City of New York, Edward

Friedman and Detective Kimberly Marshall.  (ECF No. 37, Order

Granting Motion to Consolidate Cases 14-CV-4897 and 15-CV-1727.)

[1]  In the Complaint, plaintiff seeks $2 million in damages for

---

[1] By Order dated September 16, 2014, the Court dismissed defendants City of
New York and the 66th Precinct from the action for failure to state a claim
pursuant to 28 U.S.C. §§ 1915A(b). (*See* ECF No. 6.) By Order dated August 24,
2015, the Court dismissed defendants City of New York and Edward Friedman

1

his "unlawful arrest," the warrantless search of his apartment, the solicitation of a false statement, and a failure to immediately disclose the "Complainant's Statement of Intent." (*See* Compl. At 5.)

On July 21, 2017 Detectives William Greer, John Bolden and Kimberly Marshall (hereinafter "defendants") moved for summary judgment on the basis that the General Release signed by Valdiviezo precludes Valdiviezo's 42 U.S.C. § 1983 claim in its entirety and, in the alternative, that summary judgment should granted as (1) the majority of plaintiff's claims are barred by *Heck v. Humphrey*; (2) defendants are entitled to summary judgment on plaintiff's unlawful search and seizure, false arrest and malicious prosecution claims; (3) defendants are entitled to qualified immunity; (4) plaintiff has failed to establish personal involvement of defendant Detective Bolden; (5) plaintiff's claim for deprivation of property fails as a matter of law; (6) plaintiff's state law claims and allegations regarding *Miranda* rights, racial remarks and denial of food and use of the restroom are not actionable; and (7) the Court should decline to exercise jurisdiction over any remaining state law

---

from a separate action filed by Valdiviezo under docket number 15-CV-1727. (*See* 15-CV-1727, ECF No. 9.)

claims.[23]   For the following reasons, the defendants' motion
for summary judgment is granted.

## I.   Background

On February 28, 2013, Delia Hernandez, plaintiff's
girlfriend at the time, filed a complaint with the New York City
Police Department ("NYPD") at the 62nd Precinct in Brooklyn, New
York that led to plaintiff's arrest. (See ECF No. 60,
Defendants' Statement Pursuant to Local Civil Rule 56.1("Def.
56.1"), dated July 21, 2017, ¶ 3).

The parties agree on some basic facts regarding the
February 28, 2013 arrest and the events that follow, but
plaintiff disputes the legality of his arrest and certain events
related to his arrest and prosecution.  The facts below are
drawn primarily from defendants' 56.1 Statement, and where
plaintiff materially disputes defendants' representations, those
disputes are noted.

### a. Plaintiff's Arrest, Indictment and Conviction

Ms. Hernandez was interviewed by Detective Greer of
the NYPD's 66th Precinct on February 28, 2013, the day she filed
her complaint.  (*Id*. ¶ 4.)  During the interview Ms. Hernandez

---

[2] By Order dated August 24, 2015, the Court dismissed plaintiff's claims
regarding a right "to a Grand Jury" and freedom "of speech or of the press,"
as well as plaintiff's claim for ineffective assistance of counsel. (*See* 15-
CV-1727, ECF No. 9.)

[3] This case was reassigned to the undersigned on February 21, 2018.

informed Detective Greer that on February 25, 2013 she argued

with plaintiff about a video on plaintiff's laptop that depicted

plaintiff and Ms. Hernandez's relative, who was a minor, engaged

in sexual activity, and that plaintiff pointed a handgun at Ms.

Hernandez and said, "[d]on't make me use this."  (*Id.* ¶¶ 5- 6.)

Ms. Hernandez further informed the detective that two days

later, on February 27, 2013, Ms. Hernandez found the sex video

in plaintiff's backpack and that plaintiff had placed his

handgun under the bed.  (*Id.* ¶ 7.)  On February 28, 2013, Ms.

Hernandez signed a Consent to Search form for the apartment she

shared with plaintiff.  On that same day, Detective Greer and

Detective Bolden went to the apartment located at 6408 New

Utrecht Avenue, Apt 3R, Brooklyn, New York to arrest plaintiff.

(*Id.* ¶¶ 8-11 (citing ECF No. 61 Englert Declaration ("Englert

Dec."), Ex. C[4], Arrest Report, dated February 28, 2013; Ex. O,

Declaration of Detective William Greer in Support of Motion for

Summary Judgment ("Greer Dec.").)

Plaintiff disputes many aspects of the police reports,

particularly pointing to the fact that two police reports list

an occurrence taking place on February 26, 2013 when the first

report, Ex. A, indicates that Hernandez reported that the

argument about the video took place on February 25, 2013.  (*See*

---

[4] Hereinafter references to exhibits cited in the Englert Declaration will be referred to as "Ex. ___."

ECF No. 63, Plaintiff Declaration in Opposition to the Motion for Summary Judgment, ("Pl. Opp.") ¶¶ 4-6.) Plaintiff also argues that there are inconsistencies in Ms. Hernandez's statements, including those she made in her police report and those she made at trial, regarding the dates and timing of her discovery of the explicit dvd and report to the police. (*See e.g.* Id. ¶¶ 6,7 (citing Plaintiff Exs. D and E).)

Based on the complaint by Ms. Hernandez and her subsequent interview by the police, plaintiff was arrested at approximately 5:05 p.m. at the 6408 New Utrecht Avenue apartment on February 28, 2013 and was charged with Criminal Possession of a Weapon in the Second Degree and Menacing in the Second Degree. (*See* Def. 56.1 ¶ 10.) Plaintiff was taken to the 66th Precinct, where he signed a statement acknowledging that he was advised of his *Miranda* rights. (*Id.* ¶¶ 11-12 (citing Ex. D, *Miranda* Warning).)

Plaintiff contends that he signed the *Miranda* Warning document without knowing what it was and that he was denied the translator he requested. (*See* Pl. Opp. ¶ 12.) Plaintiff also challenges the validity of his arrest, which he alleges was improperly executed without a warrant, summons or probable cause and with false evidence about a gun that he alleges was actually a starter pistol. (*See Id.* ¶ 9.) Plaintiff submits a sworn declaration in support of some of his assertions. (*See* Pl.

Opp.)  Notably, plaintiff does not contradict the substance of the argument that he had with Ms. Hernandez or the threat he made against her, the fact that Ms. Hernandez consented to a search of their apartment, or the fact that a gun was present in his home.

Later in the evening of February 28, 2013, at approximately 8:00 p.m., Detective Greer informed Detective Marshall that plaintiff was in custody for threatening Ms. Hernandez with a gun and that Ms. Hernandez complained that she found a video showing plaintiff engaged in sexual activity with her niece, who was 15 at the time the video was produced.  (*See* Def. 56.1 ¶¶ 14-15 (citing Ex. E, Complaint Follow Up Informational Report ("DD5"), General Investigation, dated February 28, 2017; Ex. P, Declaration of Detective Kimberly Marshall In Support of Motion for Summary Judgment ("Marshall Dec.").)

Detective Marshall spoke by telephone with Ms. Hernandez's niece on February 28, 2017 at approximately 10:45 p.m. and she informed Detective Marshall that she had engaged in a "consensual" sexual relationship with plaintiff from the age of 13 and last had sexual contact with Plaintiff in 2011.  (*See Id*. ¶¶ 16-18 (citing Ex. F, Complaint Follow Up Informational Report, Interview Telephone, dated February 28, 2013; Ex. P., Marshall Dec.)  Plaintiff does not dispute the factual accuracy

of the statements summarized from the call, but objects to what
he characterizes as the lack of a record or proof of the
telephone interview. (*See* Pl. Opp. ¶ 16.) He does not cite to
evidence supporting his claim.

At approximately 11:15 p.m., Detective Marshall
interviewed plaintiff in a private room at the 66th precinct
where she reminded plaintiff of his *Miranda* rights, and offered
him food, beverages and a bathroom break. (*See Def.* 56.1. ¶¶ 19-
22 (citing Ex. G, Complaint Follow Up Informational Report,
Interview In-Person, dated February 28, 2017; Ex. P.).)
Defendants assert that plaintiff agreed to the interview
regarding the case and declined the offers of food, drink and a
bathroom break. (*Id*.) Plaintiff denies he ever received a
reminder of his *Miranda* rights or an offer of food, drink and a
bathroom break. (*See* Pl. Opp. ¶¶ 20-22.) Detective Marshall's
interview notes reflect that Plaintiff stated that he had been
in a sexual relationship with Ms. Hernandez's minor relative,
but that she was 16 years old at the time, and admitted to
videotaping himself and C/V engaging in sexual intercourse.
(*See* Def. 56.1 ¶¶ 23-25 (citing Ex. G; Ex. P.).) Plaintiff
agreed to, and drafted, a written statement at approximately
11:45 p.m., which outlined his activities with Ms. Hernandez's
minor relative. (*See Id*. ¶¶ 26-27 (citing Ex. H, Plaintiff's
Written Statement; Ex. P).)

Plaintiff asserts that during the interview he stated C/V was 17 at the time of the video and alleges that his written statement was made on the false pretense that he would be sent home after writing it, and submits his declaration in opposition to Defendants' summary judgment motion supporting his assertions. (*See* Pl.Opp ¶¶ 7-12.) Plaintiff does not dispute the substance of his incriminating written statement. (*See id*. ¶¶ 23-26.) At approximately 11:50 p.m., Detective Marshall arrested plaintiff, and plaintiff was charged with "Rape in the Second Degree, Criminal Sex Act in the Second Degree, Sex Abuse in the Second Degree and Acting in a Manner Injurious to a Child." (Def. 56.1 ¶ 28 (citing Ex. I, Arrest Report, dated February 28, 2013; Ex. P.).) Plaintiff alleges that no one notified him of the charges at the time of his arrest. (Pl. Opp. ¶ 28.) On March 1, 2013, Detective Greer recovered a handgun from beneath plaintiff's and Ms. Hernandez's bed after searching plaintiff's home on consent of Ms. Hernandez. (*See* Def. 56.1 ¶ 29(citing Ex. J.).)

Plaintiff was indicted by a grand jury on or around April 13, 2013 for:

> two (2) counts of Use of a Child in a Sexual Performance; two (2) counts of Promoting a Sexual Performance by a Child; two (2) counts of Possessing a Sexual Performance by a Child; five (5) counts of Rape in the Second Degree; ten (10) counts of Criminal Sexual Act in the Second Degree; fifty-eight (58) counts of Sexual Misconduct; twelve (12) counts of

> Sexual Abuse in the Second Degree; forty-six (46)
> counts of Sexual Abuse in the Third Degree; thirteen
> (13) counts of Rape in the Third Degree; twenty-two
> (22) counts of Criminal Sexual Act in the Third
> Degree; one (1) count of Menacing in the Third Degree;
> and one (1) count of Endangering the Welfare of a
> Child.

(*Id.* ¶ 30(citing Ex. K, Indictment No. 01936-2013.)

Plaintiff was tried and convicted of 34 counts related to his sexual activity with a minor. On March 24, 2015, plaintiff was sentenced to 184 years in prison for:

> two (2) counts of Use of a Child in a Sexual
> Performance (N.Y.P.L. § 263.05); five (5) counts of
> Rape in the Second Degree (N.Y.P.L. § 130.30); five
> (5) counts of Criminal Sexual Act in the Second Degree
> (N.Y.P.L. § 130.45); nine (9) counts of Rape in the
> Third Degree (N.Y.P.L. § 130.25); twelve (12) counts
> of Criminal Sexual Act in the Third Degree (N.Y.P.L. §
> 130.40); and one (1) count of Endangering the Welfare
> of a Child (N.Y.P.L. § 260.10).

(Def. 56.1 ¶¶ 32-33 (citing Ex. M, Certificate of Disposition, dated May 5, 2015.)[5]

Plaintiff raised a number of arguments in his Opposition to defendants' motion that did not directly respond to the 56.1 statement, did not cite to supporting evidence, and opined on the credibility of Ms. Hernandez, the defendants, and the minor victim before and during his trial. Given his lack of evidence to support most of his objections, the court need not

---

[5] The charges for menacing and criminal possession were dismissed on speedy trial grounds. (*See Id.* ¶ 31, (citing Ex. M. Certificate of Disposition, dated November 18, 2014).)

address plaintiff's contentions of fact that lack evidentiary support and fail to respond directly to defendants' 56.1 statement.  Instead the court may deem to be established defendants' actual assertions that are supported by admissible evidence, and not disputed by admissible evidence in the record. Plaintiff also provided a signed declaration reciting his recollection of certain facts from the time leading up to his argument with Ms. Hernandez, through April 8, 2014, when he alleges he was served with exculpatory documents related to Ms. Hernandez for the first time.  (*See* Pl. Opp. ¶¶ 7-12.)  In it, he again contends that he was denied a translator for his interview by the police.  (*Id*. at 10.)

  b. The Instant Action and the General Release

On August 14, 2014, plaintiff filed the instant Complaint against the City of New York, Detective Greer and the 66th Precinct in the United States District Court for the Eastern District of New York.  (*See* Compl.)  On March 24, 2015, plaintiff filed another Complaint arising out of plaintiff's February 23, 2018 arrest.  (*See* Complaint, 15 CV 1727 (SLT).)

In May 2015, plaintiff settled a state court civil case captioned *Valdiviezo v. City of New York and New York City Department of Corrections*, Supreme Court Bronx County Index No. 306346-2014, with the City of New York for $3,000. (*See* Def. 56.1 ¶ 37 (citing Ex. S, Stipulation of Discontinuance with

Prejudice, dated May 22, 2015, and General Release, dated May 23, 2015.)  On May 22, 2015, plaintiff executed a Stipulation of Discontinuance with Prejudice dismissing the state court civil case, and on May 23, 2015, plaintiff executed a General Release in the same civil case.  (*Id.*)  Plaintiff was represented by Jeffrey Zeichner, Esq. in the civil case, Index No. 306346-2014, including in the settlement of the case.  (*Id.*)  The General Release explicitly released the City of New York and the New York City Department of Corrections, as well as the City of New York's "past and present officers, directors, managers, administrators, employees, agents, assignees, lessees, and representatives of the City of New York and all other individually named defendants and entities represented or indemnified by the City of New York from any "claims, causes of action, suits . . . and demands whatsoever" that plaintiff "had, now has or hereafter can, shall, or may have, either directly or through subrogees or other third persons, against the RELEASEES for, upon or by reason of any matter, cause or thing whatsoever that occurred through the date of this RELEASE."  (*See* Ex. S at 2.)  Directly above plaintiff's signature line, the General Release states "THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT."  (*Id.*)  The General Release was notarized by plaintiff's counsel.  (*Id.* at 3)

On March 22, 2016 plaintiff's civil actions in the
Eastern District of New York were consolidated under Docket No.
14-CV-4897.  (*See* ECF No. 37, Order Granting Motion to
Consolidate Cases 14-CV-4897 and 15-CV-1727.)

   c. Defendants Discover the Release

On March 28, 2017, defendants deposed plaintiff.
(*See* ECF No. 64, Supplemental Declaration of Eviana Englert
("Supp. Englert Dec."), ¶ 3 (citing Supp. Ex. R, Transcript of
Plaintiff's Deposition ("Dep. Tr."), dated March 28, 2017.)[6]  At
deposition, plaintiff testified that he "had two cases in Rikers
Island" and that, "they were resolved . . . so we had an
agreement. . . [a] settlement."   (*See* Dep. Tr. 12:20 – 13:8.)
After plaintiff's deposition, defense counsel conducted a search
for the prior settlement paperwork within the records of the
Office of the Comptroller and, upon receiving the settlement
paperwork, wrote to plaintiff asking if he would voluntarily
withdraw the instant consolidated action with prejudice due to
the terms of the General Release. (Supp. Englert Dec. ¶ 5
(citing Supp. Ex. B, Defendants' Letter to Plaintiff, dated
April 5, 2017).)  Plaintiff refused and, on July 2, 2017,
briefing commenced on defendants' motion for Summary Judgment.
(*See Id*. ¶¶ 13-19; ECF No. 51, Order Denying Motion for Pre-

---

[6] Hereinafter references to exhibits cited in the Supplemental Declaration of
Eviana Englert will be referred to as "Supp. Ex. ___."

Motion Conference And Granting Defendants Permission to Move for Summary Judgment.)  Briefing was completed on Defendants' Motion for Summary Judgment on September 22, 2017.

## II.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), "and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "All ambiguities must be resolved in favor of the non-moving party and all permissible inferences from the factual record must be drawn in that party's favor." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).  If the moving party can show that "there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Peterson v. Regina*, 935 F. Supp. 2d 628, 634 (S.D.N.Y. 2013) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

To defeat a motion for summary judgment, the non-moving party must identify probative, admissible evidence from which a reasonable factfinder could find in his favor.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-257 (1986). It

"requires the nonmoving party to go beyond the pleadings and by

[his or] her own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific

facts showing that there is a genuine issue for trial."  477

U.S. at 324 (citations omitted).  If, as to the issue on which

summary judgment is sought, there is any evidence in the record

from any source from which a reasonable inference could be drawn

in favor of the nonmoving party, summary judgment is

improper.  *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d

Cir. 1994)(citations omitted).  A *pro se* complaint must be

construed liberally to raise the strongest claim it suggests and

*pro se* pleadings are granted special solicitude.  *See Erickson

v. Pardus*, 551 U.S. 89, 94 (2007).

Under Local Civ. R. 56.1(a) a party moving for summary

judgment must submit a statement of undisputed facts and under

Local R. 56.1 (b) the party opposing the motion must include "a

correspondingly numbered paragraph responding to each numbered

paragraph in the statement of the moving party."  *Holtz v.

Rockefeller & Co.*, 258 F.3d 62, 72 (2d Cir. 2001).  Local Rule

56.1(d) requires that "[e]ach statement of material fact by a

movant or opponent must be followed by citation to evidence

which would be admissible" as required by Fed. R. Civ. P.

56(e)."  *Id.* at 73 (2d Cir. 2001).  "[W]here there are no[]

14

citations or where the cited materials do not support the
factual assertions in the Statements, the Court is free to
disregard the assertion." *Id.* The local rules warn that,
"[e]ach numbered paragraph in the statement of material facts
set forth in the statement required to be served by the moving
party will be deemed to be admitted for purposes of the motion
unless specifically controverted by a correspondingly numbered
paragraph in the statement required to be served by the opposing
party." Local Civ. R. 56.1(c). A represented party moving for
summary judgment against a *pro se* party is required to serve and
file a "Notice to *Pro Se* Litigant Who Opposes a Motion For
Summary Judgment" with Fed. R. Civ. P. 56 and Local Civil Rule
56.1 attached. Local Civ. R. 56.2. The defendants have
complied with the requirements of Local Civil Rule 56.2 based on
defendants' letter dated July 21, 2017, giving appropriate
notice to pro se plaintiff. (*See* ECF No. 56, Defendant Letter
to Plaintiff Enclosing Defendants' Motion for Summary Judgment.)

## III. Discussion

### a. Choice of Law

Federal law governs the validity of releases of
federal causes of action, but state contract law typically
provides the substantive content and context for such disputes.
*See Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir.
1998)("Under New York law, a release that is clear and

15

unambiguous on its face and which is knowingly and voluntarily entered into will be enforced."). However, where a release would waive a fundamental constitutional right, such as those guaranteed by 42 U.S.C. § 1983, the question of validity is controlled by federal law. *See e.g. Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987)(analyzing a release-dismissal agreement that waived rights pursuant to Section 1983); *Intermor v. Inc. Vill. of Malverne*, No. 03CV5164, 2007 WL 2288065, at *8 (E.D.N.Y. Aug. 8, 2007)(citations omitted); *Morris v. New York City Employees' Ret. Sys.*, 129 F. Supp. 2d 599, 605-606 (S.D.N.Y. 2001); *Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 259 (E.D.N.Y. 2012)(citations omitted) ("Although the Plaintiff cites to New York law in support of his argument that there was no release of his 42 U.S.C. § 1983 claims, this is incorrect, because the question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law.").

> b. Defendants Have Sufficiently Established the Validity
> of the General Release and its Applicability
> to the Instant Action

A court may ascertain whether a party knowingly and voluntarily waived his rights only "after a careful evaluation of the totality of all surrounding circumstances." *Warner v. Orange Cty. Dep't of Prob.*, 968 F. Supp. 917, 923 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 120 (2d Cir. 1999) (citations

omitted). Analyzing the validity of a release "is a peculiarly

fact-intensive inquiry." *Livingston v. Adirondack Beverage Co.*,

141 F.3d 434, 437-38 (2d Cir. 1998) (citing *Bormann v. AT & T

Communications, Inc.,* 875 F.2d 399, 403 (2d Cir.1989)).

The Second Circuit recently affirmed the "totality of

circumstances test" in *Livingston* for determining whether a

release of claims is knowing and voluntary. *Charlery v. City of

New York Dep't of Educ.*, No. 17-1888-CV, 2018 WL 4355914, at *1

(2d Cir. Sept. 12, 2018) (citing *Livingston*, 141 F.3d at 437-38)

(affirming grant of summary judgment dismissing claims where

plaintiff knowingly and voluntarily waived federal claims by

executing a release). In determining whether a waiver was

knowing or voluntary, the court should consider:

> 1) the plaintiff's education and business experience,
> 2) the amount of time the plaintiff had possession of
> or access to the agreement before signing it, 3) the
> role of plaintiff in deciding the terms of the
> agreement, 4) the clarity of the agreement, 5) whether
> the plaintiff was represented by or consulted with an
> attorney, and 6) whether the consideration given in
> exchange for the waiver exceeds [ ] benefits to which
> the [the plaintiff] was already entitled by contract
> or law.

*Id.* (quotation marks omitted).

Defendants offer uncontroverted evidence supporting

the enforcement of the release. Defendants contend that

plaintiff was represented by Jeffrey Zeichner, Esq. in the civil

case, Index No. 306346-2014, including in the settlement of the

state court case, as established by attorney Zeichner's signature on the Stipulation of Discontinuance and his notarization of plaintiff's signature on the General Release. (*See* Def. 56.1 ¶ 37 (citing Ex. S, Stipulation of Discontinuance with Prejudice, dated May 22, 2015, and General Release, dated May 23, 2015.) The language of the General Release, dated May 23, 2015, clearly and explicitly released the City of New York and the New York City Department of Corrections, as well as the City of New York's "past and present officers, directors, managers, administrators, employees, agents, assignees, lessees, and representatives of the City of New York and all other individually named defendants and entities represented or indemnified by the City of New York" from any "claims, causes of action, suits . . . and demands whatsoever" that plaintiff "had, now has or hereafter can, shall, or may have, either directly or through subrogees or other third persons, against the RELEASEES for, upon or by reason of any matter, cause or thing whatsoever that occurred through the date of this RELEASE." (*See* Ex. S at 2.) Directly above plaintiff's signature line, the release states "THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT." (*Id.*) The General Release also provides $3000 in consideration for the execution of the release, an amount plaintiff does not appear to be otherwise entitled to receive. (*Id.*)

Plaintiff's opposition does not allege that the
General Release was invalid or other otherwise infirm, and
offers no admissible evidence showing that the General Release
is not enforceable, as necessary to raise a genuine dispute as
to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324
(1986) (citations omitted). Plaintiff's only reference to the
General Release in his opposition is what appears to be an
objection to its inclusion in defendants' 56.1 statement, based
on plaintiff's contention that the copy of the General Release
was served on plaintiff on April 5, 2017, one day after the
close of discovery. (*See* Pl. Opp. ¶¶ 37-39 (citing Pl. Ex. K.))
Plaintiff, however, does not make the basis of his objection
clear.[7]

The April 5, 2017 disclosure of the General Release
will not preclude its admission as evidence. As defendants
aptly noted in their reply, it was plaintiff's knowledge of and
disclosure of the settlement agreement at deposition on March

---

[7] By letter dated June 12, 2017, plaintiff filed Plaintiff's Affirmation and
Respond against Defendants' Preliminary Statement Pursuant to Local Civil
Rule 56.1. (*See* ECF No. 53., Plaintiff's Affirmation and Response ("Pl. Aff.
And Response.) Plaintiff's submission contained preliminary objections to
defendants' yet-to-be-filed 56.1 statement and was improperly filed prior to
the court's June 22, 2017, order granting defendants' permission to move for
summary judgment. (See ECF No. 51.) Further it is almost fully duplicative
of plaintiff's actual opposition to the defendants' summary judgment motion.
(See ECF No. 63.) Plaintiff merely asserts that he did not recall or possess
any Stipulation of Discontinuance With Prejudice, dated May 22, 2015. (See
Pl. Aff. And Response at 5. Plaintiff's bare statement that he neither
recalls nor possesses the Stipulation of Discontinuance with Prejudice, even
if asserted in opposition to defendants' Motion for Summary Judgment, is
insufficient to raise an issue of triable fact.

28, 2017 that first put defendants on notice that the General Release existed. (*See* Supp. Ex. R, Dep. Tr. 12:20 – 13:8.) At an April 11, 2017 conference before Magistrate Judge Tiscione, defendants advised Judge Tiscione of their recent discovery of the existence of the release and plaintiff advised the court that he was missing several documents requested in discovery, at which time Judge Tiscione directed plaintiff to send defendants a list of the missing items. (Sup. Englert Dec. ¶¶ 6-7.) In the list of missing items plaintiff sent to the defendants, plaintiff also requested that defendants schedule a call to discuss the April 5, 2017 letter regarding the General Release. (*Id.* ¶ 13.) On the call, which took place on May 19, 2017, plaintiff informed defense counsel that he would not voluntarily dismiss the instant action. (*Id.* ¶ 18.) Given plaintiff's awareness of the General Release and the ongoing exchange of discovery materials after April 5, 2017, when defendants sent a letter to plaintiff enclosing a copy of the release, the court finds that plaintiff is not prejudiced by the inclusion of the General Release in defendants' summary judgment submission for consideration by the court.

The General Release fully precludes the instant action if the release is valid and enforceable. On August 14, 2014, plaintiff filed the instant Complaint against the City of New York, NYPD Detective William Greer and the NYPD 66th Precinct in

the United States District Court for the Eastern District of New York. (*See* Compl.) On March 24, 2015 plaintiff filed another Complaint arising out of plaintiff's arrest against the City of New York, NYPD Detective Kimberly Marshall and Edward Friedman. (*See* Complaint, 15 CV 1727 (SLT).) The General Release, by its terms, released any claims or causes of action plaintiff had against the City of New York and its employees as of the date plaintiff signed the release on May 23, 2015. (*See* Ex. S at 2.)

Given the foregoing facts and the absence of contrary evidence, the General Release is valid and enforceable and, as such, precludes the instant action in its entirety. *Cuffee v. City of New York*, No. 15-CV-8916, 2018 WL 1136923, at *6 (S.D.N.Y. Mar. 1, 2018)(internal quotations omitted)(granting summary judgment and enforcing the release "because Plaintiff has neither raised [a] challenge as to the authenticity of his signature on the Release, nor asserted that he signed the agreement under duress or based upon misinformation, no reasonable juror could find that Plaintiff did not . . . voluntarily, knowingly, and willingly release Defendants from any and all liability, claims, or rights of action"); *Staples v. Officer Acolatza*, No. 14-CV-3922, 2016 WL 4533560, at *3 (S.D.N.Y. Mar. 9, 2016)(finding General Release barred recovery where plaintiff did not allege any facts reasonably supporting his lack of knowledge as to the applicability of the release );

*Arzu v. City of New York*, No. 13-CV-5980, 2015 WL 4635602, at *5
(S.D.N.Y. Aug. 3, 2015)(finding that General Release precluded
claims where plaintiff did not allege the release was invalid,
but incorrectly asserted that certain claims did not accrue
until after the execution of the release); *Hackshaw v. Urquiaga*,
No. 15 Civ. 4005, 2016 WL 6534253, at *4 (S.D.N.Y. Nov. 2,
2016)(finding general release precluded claims that accrued
prior to the signing of the release); *Cuadrado v. Zito*, No. 13
Civ. 3321 VB, 2014 WL 1508609, at *3 (S.D.N.Y. Mar. 21, 2014)
(holding that "because plaintiff unambiguously agreed to waive
the claims asserted in this case [in a general release] and does
not raise any legitimate defense, defendant is entitled to
summary judgment"); *Roberts v. Doe 1*, No. 14-CV-9174, 2015 WL
670180, at *5 (S.D.N.Y. Feb. 17, 2015) (enforcing General
Release where plaintiff was represented when executing the
release and plaintiff's counsel alleged defense counsel
misrepresented the scope of the release to plaintiff but failed
to submit evidence in the form of an affidavit).

  c. Plaintiff's Motion to Amend Filed in Opposition

   Plaintiff, in conjunction with his Opposition to the
Motion for Summary Judgment, moved to amend his complaint to add
Delia Hernandez as a party, alleging defamation of character,
manufacturing false evidence, violating plaintiff's right to a
fair trial and for facilitating a violation of *Brady v.*

*Maryland,* 373 U.S. 83 (1963) ("*Brady*"). (See Pl. Opp. At 13.)
An opposition to a motion for summary judgment is not the proper
vehicle to amend a complaint, and as such the court typically
will not address such a motion.

Although leave to amend is generally freely granted,
absent undue delay, prejudice to the existing and proposed
defendant and futility, *Burch v. Pioneer Credit Recovery, Inc.*,
551 F.3d 122, 126 (2d Cir. 2008), the court denies plaintiff's
motion to amend. Here, plaintiff offers no reason for his undue
delay in seeking leave to amend his complaint to add Delia
Hernandez as a defendant. Plaintiff was clearly aware of Ms.
Hernandez's conduct at the time he commenced the instant
consolidated action in 2014, but delayed until September 2017 to
request leave to amend, in his opposition to defendants' summary
judgment motion.

Moreover, the amendment would cause existing
defendants and Ms. Hernandez prejudice, as the existing parties
have engaged in discovery and the defendants have moved for
summary judgment. *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*,
760 F.2d 442, 446 (2d Cir. 1985) (citing *Zenith Radio Corp. v.
Hazeltine Research, Inc.,* 401 U.S. 321, 330–31 (1971) (denying
motion to amend filed after the close of discovery and after a
motion for summary judgment was filed).)

Finally, the amendment would be futile because the

statutes of limitations for plaintiff's proposed claims against Ms. Hernandez have expired.  The statute of limitations for plaintiff's proposed defamation claim is one year, *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 224 (S.D.N.Y. 2013)(citations omitted), and any claim would have accrued on February 28, 2013, when Ms. Hernandez complained to the police.  The remaining claims for manufacturing of evidence, denial of fair trial and *Brady* violations, which plaintiff seeks to bring pursuant to 42 U.S.C. § 1983, have statutes of limitations of three years. *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997).

Moreover, as the instant Complaint is barred in its entirety by the General Release and is, therefore, dismissed, the court need not reach that question and plaintiff's Motion to Amend is denied, as moot.

### IV.  Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment Motion is GRANTED and the instant action is dismissed with prejudice.  Plaintiff's Motion to Amend is DENIED with prejudice.  The Clerk of Court is respectfully requested to enter judgment in favor of defendants, and send *pro se* plaintiff a copy of this memorandum and order, and the judgment, and close this case.


**SO ORDERED.**

Dated: Brooklyn, New York
      October 4, 2018

                              _____/s/_____
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York